Eastern District of Kentucky
**F I L E D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

AUG 0 2 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-563-GWU

DAVID BROWN,                                              PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Brown

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Brown

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Brown

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Brown

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Brown

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Brown had a history of a left Achilles tendon rupture and was status post repair of torn meniscus of the right knee (Tr. 19).[1]  He "concurr[ed] with the opinion of the State agency medical consultant . . . that the claimant's conditions prevent him from performing greater than sedentary work activity," which rendered him unable to perform past work.  (Tr. 20).  Based on Medical-Vocational Guideline Rules 201.27 and 201.28, however, it was determined that Brown was "not disabled."  (Tr. 21).

The plaintiff alleged he had been disabled since March, 2003 (Tr. 49, 64) due to musculoskeletal problems (Tr. 67, 74, 264) and, secondarily, high blood pressure (Tr. 93, 271) and asthma and allergies (Tr. 272).  It is clear that much of the supporting medical evidence related to the plaintiff's musculoskeletal injuries.

---

[1]The ALJ found that Brown's asthma, hypertension and complaints of back pain did not amount to "severe" impairments, however.  (Tr. 19).

7

Brown

The plaintiff injured his left Achilles tendon in May, 2003. His family doctor believed that he might have a partial tear of the tendon as his heel was still giving him trouble more than two months later. (Tr. 149). The plaintiff sought an orthopedic evaluation that July from David Muffly, who detected atrophy of the left calf, a limping gait and decreased ankle extension with calf compression on the left ankle, consistent with a chronic Achilles tendon injury (Tr. 157).

Muffly referred Brown to Lisa DeGnore. (Tr. 189). She diagnosed a chronic Achilles tendon rupture and, given that six months had passed since the original injury, opined that it would be so very difficult to reconstruct that the surgeon was only willing to attempt it if Brown would agree to quit smoking cigarettes. (Id.). She felt that his tendon would not be normal even with the best option, surgery, and that he would be unable to return to athletics. (Tr. 188). The MRI showed a 3.5 to 4 centimeter gap in the tendon and she made it clear that this would be a more complex operation than a primary Achilles tendon repair. (Id.).

During surgery, which was one year after the injury, a complete rupture of the Achilles tendon, with the central 4 centimeters of the Achilles above its original rupture diseased, was discovered. (Tr. 169). The secondary repair of the Achilles was accomplished with a flexus hallus longus interposition graft. (Tr. 169). Brown was discharged from the hospital on non-weight bearing status. (Tr. 171).

8

Brown

As of April, Brown was still not smoking and his incisions were healing well. (Tr. 187). He had moderate swelling in the forefoot and some dysthesias in the toes. (Id.). He was to remain non-weight bearing and elevate his foot more. (Id.).

The next month, the incisions were healed and the tendon intact. (Tr. 186). The toe numbness had continued, but DeGnore expected it would gradually improve. (Id.). He was placed in a 3D walker but not fully walking and was to start gentle physical therapy. (Id.).

A medical reviewer completed an assessment form in May, 2004. Taking into account the Achilles tendon repair, he believed that the plaintiff could engage in light level lifting with two hours of walking and standing a day, occasional use of the lower extremities, occasional climbing of ladders, ropes and scaffolds, occasional balance and crawling, and a need to avoid concentrated exposure to vibration. (Tr. 220-227). The medical reviewer indicated that this functioning would be possible for the following November (Tr. 220). Accordingly, the form's notations merely anticipated the plaintiff's future functioning, and other records showing the plaintiff's contemporaneous status as not even being weight bearing.

In June, DeGnore described the tendon as intact and the plaintiff was described as "doing well." (Tr. 185). He was to begin walking in his 3D walker; she indicated that "it [was] possible that he could go back [to work] five to six months after surgery." (Tr. 185) (emphasis added).

9

Meanwhile, the plaintiff had begun physical therapy in late May. (Tr. 217). By July, he had just begun full weight bearing and complained of discomfort about the left ankle joint. (Tr. 204). Strength, range of motion, and flexibility of his left ankle joint was increasing through the end of the month. (Tr. 200). As of mid-August his left ankle range of motion remained restricted by soft tissue issues and there was some tenderness along the posterior aspect of his left Achilles tendon as well as along the dorsum and plantar surface of the left foot. (Tr. 193). He still had some difficulty with the push-off portion of his gait cycle and numbness of the bottom of the left foot with prolonged weight bearing situations. (Id.).

In September, after the plaintiff's physical therapy, a second medical reviewer issued a residual functional capacity assessment opinion. He opined that the plaintiff was limited to sedentary level lifting, was limited to occasional use of his left lower extremity only two hours of standing/walking a day, never climbing ladders, ropes or scaffolds, occasional climbing of stairs, occasional balancing and crouching. (Tr. 231-238).

Aside from the fact that the medical reviewer's non-exertional restrictions should have prompted the use of a vocational expert,[2] there was no discussion of a possible closed period of DIB benefits since the deteriorated condition of the

---

[2]Social Security Ruling 96-9P does not address restrictions involving use of the lower extremities, using stairs, or vibration, or the combination of these limitations.

10

Brown

plaintiff's Achilles tendon injury ( with calf atrophy) was documented in July, 2003 by

David Muffly and the plaintiff did not even begin to progress to full weight bearing

until one year later (Tr. 204).[3]

     The case will be remanded.[4]

     This the ___2___ day of August, 2006.

                        G. WIX UNTHANK
                        SENIOR JUDGE

---

[3]The plaintiff's SSI application was not filed until 2004.  The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, that particular comment does not concern the SSI claim.

[4]Since the case is being remanded anyway, the plaintiff would presumably be allowed to supplement information on his torn meniscus (Tr. 241) and major depression (Tr. 258) which is already in the administrative transcript.  The Court notes, for example, that the information from Orthopedic Surgeon Matthew Nicholls as it currently stands does not clearly outline details of treatment or current functional status (as opposed to "future disability.")

11